RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 5/25/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| SIMON TEMPLE BROWN<br>   Appellant | CIVIL ACTION<br>NO. 2:11-cv-1278 |
| VERSUS | |
| MICHAEL J. ASTRUE<br>COMMISSIONER OF SOCIAL SECURITY<br>   Appellee | JUDGE JAMES T. TRIMBLE, JR.<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Simon Temple Brown ("Brown"), born January 27, 1965, protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on or about January 29, 2008. (R. 185-197). In the applications, Brown alleged a disability onset date of April 30, 2007 due to arthritis, insomnia, depression, memory loss, anxiety, excessive weight loss and leg, hip and back pain (Id.).

The applications were denied June 10, 2008 and Brown filed a request for hearing on June 17, 2008 (R. 77-85). Brown, requested counsel at his first hearing so it was rescheduled (R. 27-31). However, when he failed to attend that hearing, another was scheduled on June 8, 2010 in Lake Charles, Louisiana (R. 32-76). David R. Wurm, Administrative Law Judge ("ALJ") presided over this hearing and Brown, his non-attorney representative, Anthony Mitchell, two independent medical examiners, Drs. Ashok I.

Khushalani and John Billinghurst, and Vocational Expert Richard Galloway attended and testified at the hearing (Id.).[1]

The ALJ issued a decision dated June 25, 2010 in which he found Brown was not disabled under sections 216(I), 223(d) nor 1614(a)(3)(A) of the Social Security Act (R. 8-26). Brown filed a request for review with the Appeals Council on July 28, 2010 (R. 4-5). The request was denied on May 11, 2011 and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner") as of that date (R. 1-3).

To qualify for SSI and/or DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## SUMMARY OF PERTINENT FACTS

Brown protectively filed applications for DIB and SSI alleging he was disabled as of April 30, 2007 due to arthritis, insomnia,

---

[1] Dr. Khushalani's attendance was by telephone.

depression, memory loss, anxiety, excessive weight loss and leg, hip and back pain (R. 185-197). At the time of filing, Brown was 42 years old.

At the time of the hearing, Brown was 45 years old (R. 52). He testified that he attended school through the 7th grade and then quit because he could not get along with the other students or teachers and was always in trouble (R. 53). Though Brown was unable to say whether he failed any other grades or was ever in special education classes, records from Allen Parish Schools show Brown attended the seventh grade three times having failed twice and been promoted once. Brown then dropped out of school in the eighth grade at the age of 15 (R. 53-54, 363).

Brown also testified that he last worked a month prior to the hearing doing occasional yard work but had to quit due to pain (R. 54-55). Prior to that work, he worked three to four years for an offshore construction company. (R. 55). He was ultimately fired from that job after he failed to return to work after suffering a broken collar bone (Id.). Brown stated that he could not work due to pain, his inability to be around people and his desire to "kill people" (R. 55-56).

Brown stated he experienced pain in his back, shoulders, knees and elbows as well as continual weight loss and depression (R. 56). He stated Dr. Shay prescribed a cane for walking a year before the hearing but no such notation was found in the medical records

3

(Id.). Brown further testified that he had trouble sleeping, eating, concentrating and making decisions and that he felt nervous and anxious. He also experienced suicidal thoughts which he reported to his doctors (R. 57). Brown testified that he was hospitalized as a result of experiencing these feelings; however, the record lacks any medical documentation of such (R. 57).

Dr. Billinghurst also testified at the hearing. He stated that after reviewing Brown's medical records, he felt that Brown's complaints of pain were not substantiated by the medical evidence. Specifically, he noted that with the exception of some osteoarthritis at L5 and S1 and "calcification developing on the right side between thoracic number 7 and number 10", Brown's x-rays of his back, knees, elbow, shoulder and hips were all normal (R. 44). Dr. Billinghurst further noted that Brown's range of motion was normal during his exams in November, 2007 and April 2008 and though he complained of tenderness and pain, there were inconsistencies between the reports of pain and the objective findings (R. 44-45).

Despite these statements, Dr. Billinghurst acknowledged that degenerative disc disease could cause the back pain Brown experienced and could limit his ability to stand and walk no more than two hours a day (R. 47). He further stated Brown would need a sit/stand option every 45 minutes (R. 48).

The ALJ also called upon Vocational Expert ("VE"), Dr.

4

Galloway, to testify at the hearing. The ALJ asked the VE to consider:

> an individual limited to light exertion work activity that's defined in the regulations with additional limitations as follows: occasional stopping and crouching, no climbing, no work on unprotected heights or around hazards.... The person would have an opportunity to sit down or stand up in interval not to exceed 45 minutes to an hour... Occasional interaction with the general public and no complex or detailed, so basically unskilled work.

(R. 58-59). Based on this hypothetical, the VE found the sit/stand alternate, while tolerated under most conditions, resulted in the diminution of work options (R. 59). However, such a person would still be able to perform the work of a cleaner in a hotel, a locker room attendant, a laundry worker, an assembler, a nut sorter and a production inspector (R. 59-60). All of which was considered unskilled, light work (R. 60).

When asked by Brown's representative whether a limitation of sitting and standing only two hours a day would affect the job options, the VE replied that such an individual would not be able to perform any of the listed jobs (R. 61). Brown's representative then questioned the VE as to whether the following impairments, taken individually would affect the claimant's ability to perform the listed jobs: unable to make judgments or simple work related decisions, unable to respond appropriately to work pressures, unable to respond appropriately to changes in the work place. While the VE thought an inability to make judgments or simple work

5

related decision would not allow him to perform the listed jobs, he felt that the jobs listed would be limited if the person was unable to respond appropriately work pressure or changes in the work setting (R. 61-63). When asked to take the impairments in combination, the VE confirmed such a person would not be able to perform any of the listed jobs (Id.).

Following the VE's testimony, Dr. Khushalani testified regarding Brown's mental status. He stated that the assessment of mental retardation by Dr. Jerry L. Whiteman was questionable because Brown admitted to smoking marijuana the day of the exam which skewed the results (R. 67).[2] Dr. Khushalani opined Brown experienced moderate limitations in activities of daily living, maintaining concentration, persistence and pace but he did not experience any episodes of decompensation (R. 68). Thus, he did not meet any of the listings (Id.). However, he suggested that if additional testing was done and evidence of mental retardation was evident, an assessment of Listing 12.05 should be conducted (Id.) He also advised that if you coupled Dr. Bolwahnn's Axis I diagnosis with Brown's IQ score, Brown met Listing 12.05C (R. 75). In sum, he believed that additional WAIS testing was needed to accurately assess Brown's mental retardation (R. 76).

The ALJ considered the entire record and found Brown was not

---

[2] Dr. Khushalani testified that he admitted to smoking marijuana the day before the testing but Dr. Whiteman's notes show he admitted to smoking marijuana that day.

under a disability, as defined by the Social Security Act, from April 30, 2007 through the date of the decision, June 25, 2010 (R. 22). In arriving at this conclusion, the ALJ reviewed, among other things, the medical evidence which indicated Brown had the following severe impairments: diffuse idiopathic skeletal hyperostosis (DISH), adjustment disorder, and personality disorder (R. 13). The ALJ also determined that the impairments, whether alone or in combination, did not meet or medially equal any of the Listings in 20 C.F.R. 404, Subpart P, Appendix 1 (R. 14).

The ALJ considered all of Brown's symptoms and the extent to which they could reasonably be accepted as consistent with objective medical evidence and other evidence as required by 20 C.F.R. §404.1529, 20 C.F.R. §416.929 and Social Security Rulings (SSR) 96-4p and 96-7. Additionally, the ALJ considered opinion evidence in accordance with the requirements of 20 C.F.R. §404.1527, 20 C.F.R. §416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. After much discussion, the ALJ stated he found Brown possessed the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with only occasionally stooping or crouching, no climbing and no working at unprotected heights or around hazzards. The ALJ also imposed a sit/stand option at intervals not to exceed 45 minutes to 1 hour and limited Brown to occasional interaction with the general public and jobs which did not impose complex or detailed tasks (R. 17).

The ALJ found Brown capable of performing a significant number of jobs which existed in the national economy (R. 21). Those jobs included hotel cleaner, locker room attendant, laundry worker, assembler and nut sorter (Id.). Accordingly, he found Brown was not disabled (R. 22).

## Standard of Review

In considering Social Security appeals such as the one presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th

Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices are for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

Issues

Brown raises the following issues for judicial review on appeal:

1. The ALJ's RFC finding is not supported by substantial evidence; and

2. The ALJ posited a defective step five hypothetical question to the vocational expert; the expert's responses thereto cannot constitute substantial evidence upon which to base this step five denial; and,

3. The ALJ failed to fully and fairly develop the facts regarding the presence of borderline intellectual functioning and/or mild mental retardation.

Residual Functional Capacity

Brown contends that the ALJ's RFC is not supported by

substantial evidence because the ALJ failed to adopt the restriction set forth by Dr. Billinghurst that Brown could only sit or walk two hours a day.

A RFC is a medical assessment of the work a claimant can perform despite his or her limitations. 20 C.F.R. §416.945. The ALJ is responsible for determining a claimant's RFC based on all of the relevant evidence in the record. 20 C.F.R. §404.1546 (1994); SSR 96-8p. While Brown is correct that an ALJ cannot "pick and choose" evidence which supports his opinion, he is not required to incorporate limitations in the RFC that he did not find to be supported by the record. 20 C.F.R. 404.1545.

In the instant case, the ALJ did not find the limitation of standing or walking only two hours in an eight hour day to be supported by the record. In support for his position, the ALJ noted reports of malingering, unremarkable x-rays of his various joints with the exception of his spine, a full range of motion, test results which failed to show any signs of a rheumatological disease, the absence of swelling in joints and failure to follow up on a referral to a pain clinic (R. 17-20). Additionally, he noted Dr. Billinghurst's own statement that, based on a review of the medical records, Brown's pain was "out of proportion" and he had "no good explanation for his pain in all [of] his other joints" (Id. and R. 46).

The record, including medical records, substantially supports

10

the ALJ's decision not to limit Brown to two hours of standing or walking. Though Dr. Billinghurst may have recommended the limitation he also stated Brown's complaints of pain were not supported by the objective medical evidence. This statement overshadowed his suggestion that he be limited to two hours of standing or walking and it was supported by a substantial amount of medical evidence in the record. Thus, the ALJ did not err in declining to adopt the limitation.

Step 5 Hypothetical

Because the ALJ was not required to adopt the finding that Brown was limited to standing or walking only two hours in an eight hour day, there was no reason for him to incorporate the limitation in the RFC.

Brown further contends that the ALJ failed to incorporate his non-exertional mental impairments in the hypothetical questions posed to the VE. The ALJ asked the VE to consider jobs which required only occasional interaction with the public and did not involve complex or detailed tasks. This considers the limitations needed by someone who experienced moderate deficits in concentration, persistence and pace. Thus, the ALJ's hypothetical question properly considered Brown's non-exertional mental impairments. However, as is set more fully set forth below, the record was not fully and fairly developed as to Brown's mental status. Thus, it is possible his mental RFC will change as will

11

the hypothetical posed to the VE. Accordingly, the determination that no error existed may be moot.

Failure to Develop the Record

Brown contends that the ALJ failed to fully and fairly develop the record regarding the presence of borderline intellectual functioning and/or mild mental retardation. Brown argues that had the ALJ ordered additional evaluation of his intellectual functioning, Brown would have met either Listing 12.05B or 12.05C.

The only IQ score in the record was obtained by Dr. Whiteman after administering WAIS testing. The testing revealed Brown's IQ was in the 40 to 50 range which would render him mentally retarded pursuant to 12.05B. Additionally, Dr. Khushalani stated that the score coupled with Dr. Bolwahnn's Axis I diagnosis would meet the criteria for Listing 12.05C. However, due to the fact that Brown smoked marijuana the day of the testing, Dr. Khushalani advised that the scores could not be considered valid.

> Listing 12.05, Mental Retardation provides in pertinent part:
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied...
>
> B.  A valid verbal, performance, or full scale IQ of 59 or less;
> OR
>
> C.  A valid verbal, performance, or full scale IQ of 60

12

> through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function ....

Thus, a "valid" IQ score is needed to properly evaluate whether the claimant meets the Listing.

The issue of mental retardation was before the ALJ at the hearing; however, he failed to fully and fairly develop the record (R. 59). While it is mystifying as to why Brown failed to cooperate in the collection of evidence which could possibly result in the award of social security benefits and though the ALJ's frustration is certainly understandable, a valid IQ score must be obtained before a proper evaluation of the Listing can be made. The ALJ's failure to refer Brown for another mental evaluation was error. Accordingly, the case should be remanded so that Brown can undergo additional testing in order to obtain a valid IQ score.

## Conclusion

Accordingly, IT IS RECOMMENDED that Brown's appeal be GRANTED, the decision of the Commissioner be VACATED and the matter REMANDED for further proceedings consistent with the views expressed herein.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served

13

with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Thus done and signed at Alexandria, Louisiana this 25th day of May, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

14